UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                              **CRIMINAL NO. 5:14-CR-31**
                                                              (Judge Bailey)

**TIMOTHY SUMMERS,**
**LEA ANN SUMMERS,**

    Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR A NEW TRIAL

### I.    Introduction

Pending before this Court is Defendant Timothy Summers's Post-Trial Motion, filed on December 2, 2014, which moves this Court for an order granting defendant a new trial. [Doc. 118]. On December 16, 2014, the Co-defendant, Lea Ann Summers, joined defendant Timothy Summers's motion, in her Motion to Join Co-Defendant's Post-Trial Motion. [Doc. 119]. The defendants seek a new trial, arguing that they should have been permitted to offer out-of-court statements of the victim witness to rebut the witness's testimony. For the reasons set forth below, this Court DENIES these motions.

### II.    Facts and procedural history

On October 17, 2014, a jury found both defendants guilty of Mail Fraud Conspiracy (Count 1) and Aiding and Abetting Securities Fraud (Count 6). Individually, defendant Lea Ann Summers was found guilty of four counts of mail fraud (Counts 2-5), and defendant Timothy Summers was found guilty of Interstate Transportation of Stolen Property (Count 7). [Doc. 100].

1

The Government's theory was that the defendants fraudulently sold Betty J. Woods's stock, whom is defendant Timothy Summers's mother, and bought a beach house with the proceeds. Therefore, a central issue at trial was whether Ms. Woods gave the defendants permission to cash in some of her stock. The victim, Betty J. Woods, testified at the trial, and she also testified before a federal grand jury on June 3, 2014. [Doc. 118-1].

Defendants argue that they should have been able to introduce hearsay testimony about a conversation that defendant Timothy Summers had with his mother, Ms. Woods. Specifically, defendant Timothy Summers's testimony would be that during his private conversation with Ms. Woods, she expressly gave him permission to cash in the stock. *See* Post-Trial Mot. at 2, Doc. 118. Before defendant Timothy Summers's testimony, defense counsel informed the Court that "I would expect to ask some questions which may elicit what might be deemed hearsay testimony of Betty Woods. And I would anticipate that there would be an objection to that, and so I would tender to the judge that that evidence would be used to impeach Mrs. Woods' former sworn testimony." Trial Tr. 567–68, Doc. 116, at 5–6. This Court denied that line of questioning as impermissible hearsay.

During direct examination, Timothy Summers testified that he and his wife, co-defendant Lea Ann Summers, wanted to purchase a beach house, and they decided to ask his mother, Betty J. Woods, for a loan in order to purchase the beach house. Trial Tr. 589, Doc. 116, at 27. Counsel then asked the defendant to explain how he and his wife requested a loan from his mother.

Q. And is that when you made the determination to talk to your mother?

A. Yes, ma'am.

Q. What did you do?

A. Lea Ann and I -- my mother lives half an hour from us. Lea Ann and I went down to see my mother.

***

Q. When you got there, how did you broach the subject to her?

A. We were in her living room. And we said -- or I had said, maybe Lea Ann said, I don't remember exact, that we had finally found a little place like we had been looking for for years. And we said -- I think maybe I said this one, "Mom, I would sure like to have a loan so maybe we could buy this house."

***

Q. When you broached the subject of the loan, did you -- did you receive any kind of opinion or conclusion as to whether or not that -- that information was acceptable to her?

A. There was no doubt in my mind it was acceptable to her. She first said --

MR. PERRI: Objection, Your Honor, as to what she said.

THE COURT: Sustained.

Q. No.

A. Oh, I can't say.

Trial Tr. 592–93, Doc 116, at 30-31. Then, Mr. Summers went on to discuss how he and co-defendant Lea Ann Summers effectuated the "loan." In the instant motion, defendants argue that Ms. Woods's response to their request for a loan should have been admissible.

III. **Applicable Law**

Under the Federal Rules of Criminal Procedure 33(a), a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Trial courts "'should

3

exercise its discretion to award a new trial sparingly,' and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (internal quotation marks omitted).

## IV. Discussion

The defendants appear to assert three arguments as to why this Court erred in its determination that defendant Timothy Summers's proffered testimony was inadmissible hearsay: 1) the witness, Ms. Woods, should have been treated as an unavailable witness; 2) the defendants were denied their Sixth Amendment right to confront their accuser because Ms. Woods's failed mental state rendered cross-examination inadequate; and 3) the proffered statement should have been admitted under the residual exception to hearsay.

### 1. Ms. Woods should not have been treated as unavailable for hearsay purposes.

Defendants argue that Ms. Woods should have been treated as unavailable for purposes of hearsay. To support this argument, defendants point out that Ms. Woods's trial and grand jury testimony were inconsistent, and her testimony indicated that she is hard of hearing and that she was unable to remember key information.

During her grand jury testimony, Ms. Woods testified that the defendants asked her about her stock. Trial Tr. 196, Doc. 114, at 196. However, on direct examination, Ms. Woods testified the defendants never asked her if they could sell her stock. Trial Tr. 192. During cross-examination, defense counsel impeached Ms. Woods on her inconsistent

4

grand jury testimony[1]:

> Q: Mr Perri asked you: Did they want, did they ask you anything about your stock? Your answer was: I'm sure they did. I'm sure they did. Because that was very important to me.
>
> ***
>
> So. When you testified back in June and you said that you were sure they did ask you about their stock, that wasn't correct?
>
> A: No, sir. They never mentioned that stock to me until I got it through the mail telling me that my name - - their name was on my stock.

Trial Tr. 195–96, Doc. 114, at 195–96.

Under Fed. R. of Evid. 804(a)(3), certain hearsay statements are admissible, if the declarant is unavailable, and "a declarant is considered to be unavailable as a witness if the declarant . . . testifies to not remembering the subject matter." However, here Ms. Woods was confident in her testimony that the defendants never asked her about her stock. See Trial Tr. 196, Doc. 114, at 196. A witness's inconsistent statement or mistake in recollecting an event does not render a witness unavailable, but, rather, provides the opposing party an opportunity to impeach the witness.

Although the defendants couch their argument in terms of Fed. R. Evid. 804, it appears that defendants contend that Ms. Woods was not competent to testify because of her forgetfulness and difficulty hearing. This argument has no merit under Federal Rule of Evidence 601, which presumes every witness is to testify, "unless it can be shown that the witness does not have personal knowledge of the matters about which he is to testify,

---

[1]The Court permitted defense counsel to read Ms. Woods's grand jury transcript to her because Ms. Woods had difficulty reading the transcript due to the size of the print. Trial Tr. 195, Doc. 114, at 195.

5

that he does not have the capacity to recall, or that he does not understand the duty to testify truthfully." *United States v. Lightly*, 677 F.2d 1027, 1028 (4th Cir. 1982). None of these are present here. Defendants' arguments go to the credibility of Ms. Woods—not her competency.

## 2. The Confrontation Clause was not violated.

In their motion, the defendants briefly mention that the defendants' right to confront their accuser under the Sixth Amendment was violated. Although not well articulated, this Court deciphers the defendants' argument to state that because Ms. Woods testimony indicated that she was forgetful and suffered from a loss of "mental acuity," the defendant was deprived of an opportunity to cross-examine her.

The Confrontation Clause requires that "[i]f an extrajudicial statement of a witness is testimonial, it may not be admitted against the accused to prove the truth of what the witness said unless that witness is unavailable to testify and the defendant had a prior opportunity to cross-examine that witness." Glen Weissenberger & James J. Duane, Federal Rules of Evidence: Rules, Legislative History, Commentary and Authority 507 (7th ed. 2011); *see also Crawford v. Washington*, 541 U.S. 36, 59 (2004).

Ms. Woods's grand jury testimony certainly falls under testimonial. *See Crawford*, 541 U.S. at 68. But, although defendants argue that Ms. Woods should have been treated as unavailable, this argument is unpersuasive. Here, the confrontation clause was not violated. The Government did not introduce Ms. Woods's grand jury testimony to prove its case at trial. Instead, Ms. Woods testified from her own personal knowledge.

The Court has repeatedly held:

[t]he Confrontation Clause includes no guarantee that every witness called

by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.

*United States v. Owens*, 484 U.S. 554, 558 (1988) (quoting *Delaware v. Fensterer*, 474 U.S. 1521–22 (1985)). Here, on cross-examination, defense counsel exposed Ms. Woods's forgetfulness, hearing difficulties, and confusion to the jury, including impeaching Ms. Woods with her grand jury testimony. Trial Tr. 193–203, Doc. 114. However, a forgetful witness does not render the witness unavailable for Confrontation Clause purposes. *See Owens*, 484 U.S. at 558–64 . Rather, this is fodder for cross examination to demonstrate the witness's lack of credibility.

### 3. The residual exception to hearsay does not apply here.

Federal Rule of Evidence 807, previously codified under Fed. R. Evid. 803(24), 804(b)(5), provides for a residual exception to the hearsay rule. Courts are directed to use this exception "very rarely, and only in exceptional circumstances." S. Rep. No. 93-1277, 93d Cong., 2d., at 18–20 (1974). For the residual exception to apply, the hearsay statement must meet four requirements:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807. This residual exception is appropriate when the "out of court statements . . . contain strong circumstantial indicia of reliability, that are highly probative on the

material questions at trial, and that are better than other evidence otherwise available." *United States v. Dunford*, 148 F.3d 385, 393 (4th Cir. 1998) (internal quotations omitted) (finding that hearsay statements made by two victims were trustworthy because the victims told consistent stories, at different times, to different people, and physical evidence corroborated the victims' stories).

In the present case, the defendants' proffered hearsay statement does not possess any "circumstantial indicia of reliability." The hearsay statement was made in private, and there is no evidence to corroborate the statement. Moreover, here, much better evidence existed: the declarant took the stand and denied making the statement. Therefore, this statement does not fall under the residual exception to hearsay.

### V.  Conclusion

Accordingly, Defendants Timothy Summers Lea Ann Summers's Post-Trial Motions **[Docs. 118, 119]** are hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

DATED: January **6**, 2015.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE